ROBERT T. McMURRAY ET AL., DEFENDANTS IN ERROR, v. THE SISTERS OF CHARITY OF ST. ELIZABETH, PLAINTIFF IN ERROR.

Submitted July 8, 1902—Decided November 17, 1902.

1. If an order be drawn payable out of a specified fund to become due from the drawee to the drawer, acceptance thereof binds the drawee to the extent only that such fund becomes available for the purpose.
2. The force, as an order, of a writing as follows: "We authorize you to pay to R. T. McM. & Bro., the sum of $2,360 (80% of our contract with him for iron work on St. Mary's Hospital at Passaic, N. J.), same to be deducted out of our eighth payment," is limited to the designated fund.
3. A decree of interpleader will conclude a defendant thereto as to the fund in controversy even though his right to sue at law on his claim is not enjoined.

On error to the Supreme Court.

The action resulting in the judgment now under review was begun in the Supreme Court in December, 1899. The plaintiffs declared on the common counts, annexing a notice as follows:

"Notice is hereby given that this action is brought to recover the amount due on a certain acceptance of an order upon said defendant, which order was in form following, to wit:

" 'NEW YORK, January 31, 1898.

" '*Rev. J. A. Shepard, Passaic, N. J.:*

" 'DEAR SIR—We authorize you to pay to Robert T. McMurray & Brother, the sum of $2,360.00 (80 % of our contract with him for iron work on St. Mary's Hospital at Passaic, N. J.), same to be deducted out of our eighth payment.

" 'SMITH BROS.

" 'WM. J. SMITH.'

"Which order was accepted by said Shepard as agent of said defendant, but said defendant has neglected and refused, and still neglects and refuses, to pay the amount due on said order. Judgment will be claimed for $2,360 besides interest and costs of suit."

Under plea of the general issue the cause came to trial in the Morris Circuit at the October Term, 1901. The plaintiffs offered the following evidence: In March, 1897, the defendant, a corporation, gave to Rev. Father John A. Shepard, a priest of the Roman Catholic Church, in charge of a parish in the city of Passaic, a written power of attorney, under seal, "to exercise a general control and supervision of the erection and construction of St. Mary's Hospital, in the city of Passaic aforesaid, and to give, execute and deliver in said corporate name, or in the name of its said attorney, all contracts, agreements, bonds, notes, releases, receipts, acquittances, discharges and other instruments in writing, whether under seal or otherwise, of whatever nature as to its said attorney may seem meet in the carrying on of said business of erecting and

constructing of the said St. Mary's Hospital, and to do and perform all necessary acts in the execution and prosecution of the aforesaid business in as full. and ample a manner as it might do if it were personally present."

On March 17th, 1897, the defendant made a written contract, under seal, with Smith Brothers, for $39,987, to erect and finish specified mason, carpenter and other works, and furnish the materials therefor, required for St. Mary's Hospital, to the satisfaction and under the direction of certain architects named, to be testified by writing or certificate under their hands. The compensation of the contractors was to be made, as the work progressed, in nine payments, for each of which the architects' certificate was to be a prerequisite; the eighth payment was to be $3,000, and the final payment, on completion of the work, was to be $9,987. The contract contained the usual provision for the owner to finish the work at the expense of the contractors in case of their default after written notice. It was filed in the office of the clerk of the county of Passaic on March 27th, 1897.

The date, in March, of the power of attorney to Father Shepard is blank, and it does not appear whether it preceded or followed the making of this principal contract, but it was proved that Father Shepard did exercise general control and supervision of the erection and construction of the hospital, including the execution of written contracts for the plumbing and gas fitting. He continued to act in the premises until he left Passaic in April, 1898.

Smith Brothers made a subcontract with the plaintiffs to furnish the iron work for the hospital for $2,950. On January 31st, 1898, they procured and, within a day or two thereafter, presented to Father Shepard the paper-writing, a copy of which was annexed to the declaration in the cause. At that time the first seven payments provided for in the contract had been made to Smith Brothers. Shortly afterwards, on their default, their contract was completed by their bondsmen at an expense, paid by the owner, that left due of the contract price about $4,500, but no certificate for the eighth, or for the final payment, was ever given by the archi-

tect. This evidence, together with testimony as to what Father Shepard said on presentation of the paper-writing of January 31st, 1898, and of certain subsequent admissions by him, proved under objection and exception, constituted the case made for the plaintiffs. A motion to nonsuit was denied and exception was sealed.

The defendant offered the following evidence, which, with Father Shepard's version of his oral statements, above referred to, constituted the case for the defence: On February 21st, 1898, the plaintiffs served on Father Shepard a stop-notice, addressed to the defendant, demanding $625 for work and materials furnished in the erection of the hospital over and above $2,360 recited as having been embraced in the order theretofore served, and on March 12th, 1898, they so served a like stop-notice for $2,360.

On February 1st, 1899, the defendant exhibited, as complainant in the Court of Chancery, a bill of interpleader against Smith Brothers, McMurray & Brother and a large number of other persons, as defendants, setting out the contract of Smith Brothers, completion of the work, as above stated, and that there was a balance in hand of $4,549 ready to be paid into court. There were also set out the three paper-writings served by McMurray & Brother, and various stop-notices alleged to have been served by the other defendants, and it was prayed that the defendants might be compelled to interplead and settle their rights with respect to the money admitted to be due from the complainant, and that any proceedings at law or equity against the complainant with respect to the premises might be enjoined. McMurray & Brother filed answer, verified March 16th, 1899, setting up their subcontract, their order of January 31st, 1898, as working an assignment *pro tanto,* and further setting up their stop-notices above mentioned. In this answer they alleged that when the order of January 31st, 1898, was served there was less than $50 worth of work embraced in their contract remaining unfinished, and that, at the time of its service, Father Shepard "told these defendants to go ahead and complete the work; that there were ample funds then due Smith

Brothers to complete the building and to pay all contractors, and that these defendants would surely be paid." They further alleged that on January 21st, 1899, they had commenced suit in the Supreme Court against the complainant and verily believed they had a good cause of action against it upon the promises and assurances of its agent. They claimed priority of payment out of the fund whereof an interpleader was sought, and contended that if distribution *pro rata* should be ordered, they ought not to be deprived of any right or ground of action they had at law against the complainant for any balance of what was remaining due them; and, reserving the right to suit on the aforesaid promise or assurance of the complainant, they tendered themselves willing to comply with whatever decree might be made.

On November 21st, 1899, the Court of Chancery made a decree in the cause reciting the pleadings and proofs and the deposit in court of $4,549, which the court was satisfied was the true amount due from the complainant to Smith Brothers, adjudging that the bill of interpleader was properly brought, and decreeing that the complainant be dismissed from further prosecution of the suit, with costs and counsel fee out of the fund, and that the defendants interplead, &c., and be enjoined from further or other proceedings in any suit at law or in equity for the recovery of any moneys touching the matters set forth in the bill of complaint; "but nothing herein shall be taken or held as in anywise affecting the right of the defendants Robert T. McMurray and William H. McMurray, trading as R. T. McMurray & Brother, from prosecuting their suit at law against the complainant so far as the same is based upon the acceptance, by the complainant, of an order, served by Smith Brothers upon the complainant, in their favor." On January 4th, 1900, an order of distribution was made in the cause, whereby the fund in court was ordered paid to defendants other than McMurray & Brother, who were not mentioned therein.

The only evidence in rebuttal was testimony in explanation or denial of that of Father Shepard. A motion to direct a verdict in favor of the defendant was denied and exception

was sealed. The case was then submitted to the jury on the single question of whether or not Father Shepard had verbally accepted the order of January 31st, 1898, with direction that such an acceptance would compel a verdict in favor of the plaintiffs for $2,360 and interest. The verdict was for the plaintiffs, and upon the consequent judgment the present writ of error was brought.

For the plaintiff in error; *John B. Humphreys.*

For the defendants in error, *Coult, Howell & Ten Eyck.*

The opinion of the court was delivered by

COLLINS, J. It is at least doubtful if, under the terms of his power of attorney, Father Shepard had any authority to bind the defendant by the verbal acceptance found by the jury, and it is more than doubtful if his subsequent statements were legal evidence to bind the defendant as admissions; but it is not necessary to say more than this on these subjects, for we are unanimously of opinion that, upon the facts above recited, a verdict in favor of the defendant should have been directed upon the ground that the so-called order, acceptance of which was alleged, was limited to a fund the proper distribution of which was no longer chargeable to the defendant.

In a vague way the answer in the Chancery suit set up an independent promise of Father Shepard, and the testimony for the plaintiff in the present cause points in the same direction; but, whatever may have been the character of the claim as originally sued, the present action, begun after the Chancery decree, is, in terms, limited to an acceptance of the written order—to call it such—of January 31st, 1898. The authority of that instrument was to deduct the sum of $2,360 out of the eighth payment of the contractors; and an acceptance, by the owner, would be no more than a promise to make such deduction and pay the money to McMurray & Brother, instead of to the contractors. Plainly, if the contractors

never became entitled to their eighth payment, McMurray & Brother could have no right to any part of it. In the like case of *Herter* v. *Goss & Edsall Co.,* 28 *Vroom* 42; *affirmed,* 30 *Id.* 268, such was the rule declared, subject to the qualification that the owner could not, by his own act, defeat the condition on which the order would become available. It is a general rule that if an order be drawn payable out of a specified fund to become due from the drawee to the drawer, acceptance thereof binds the drawee to the extent only that such fund becomes available for the purpose. *Dan. Neg. Inst.,* §§ 513, 517.

In their argument in this court the counsel for McMurray & Brother concede that any right of recovery of their clients was limited to the designated fund and to the surplus left after payment of the expense of finishing the work on the default of the contractors; but they insist that, as that surplus was sufficient to pay the amount of the order, the plaintiffs' case was established. So it might have been but for the Chancery decree. That adjudication was admitted in evidence, over objection, and, if non-efficacious, should not be considered. We think it not only efficacious but conclusive as a bar to the action. As the claim of McMurray & Brother was limited to the fund on which other persons also made claim, the decree for an interpleader in respect to all claims against that fund was a full discharge of the complainant in the suit. That result of such a decree is well settled wherever equity practice prevails, and nowhere more firmly than in this court. *Willison* v. *Salmon,* 18 *Stew. Eq.* 257; *Hall* v. *Baldwin, Id.* 858, 866.

McMurray & Brother, in their answer, expressly offered to submit themselves to such a decree. They asked, however, and the court permitted them to reserve, the right to assert, at law, an alleged general liability of the complainant to them. That was not in accordance with the previous practice of the Court of Chancery, for it had been held, in that court, that the only course open on a contention of personal liability was to prove it, and, because of it, ask a dismissal of the bill

as improperly brought. *Wakeman* v. *Kingsland,* 1 *Dick. Ch. Rep.* 113, 117.

It was doubtless the reservation that was made from the injunctive part of the decree that moved the learned trial justice to the ruling now under review, but such a reservation could not destroy the normal effect, on the fund, of the decree as a discharge of the complainant with respect thereto. In interpleader cases the protection of injunction is only needed *in limine.* After rendition the decree itself affords adequate protection as an adjudicated bar to the claims on the fund of the defendants thereto. The reservation, in terms, was only of a pending suit, but, if we treat it as broad enough to include a suit to be brought after the decree, it is plain that its purpose was to permit the assertion of a general liability. That was irregular, according to the former practice of the court, but the only remedy of the complainant against it would have been by appeal. The suit could proceed, but when, on the trial, it appeared—as we now adjudge—that the liability on the alleged acceptance was not general, but limited to a particular fund, the discharge of that liability effected by the decree presented a complete bar to recovery. With the proceedings subsequent to the decree the complainant had no concern. Whether McMurray & Brother abandoned their claim to the fund or it was adversely decided is immaterial. They were at liberty to assert, at law, a general liability, and maintain it, if they could; but to the fund their recourse was only possible through the Court of Chancery.

The judgment must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, HENDRICKSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 13.